**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**DAWN V. JOHNSON**                                                                           **PLAINTIFF**

**VS.**                          **NO. 4:06-CV-01175 BD**

**CELESTINA BRYSON,** *et al.*                                                    **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending is Defendants' Motion for Summary Judgment (docket entry #44). Plaintiff has responded (#52). For the reasons set forth below, the Motion is GRANTED.

**I.    Undisputed Facts**

University of Arkansas for Medical Sciences ("UAMS") hired the Plaintiff, Dawn Johnson, to work as a Patient Services Associate ("PSA") on floors 6B and 4A of the hospital. As a PSA, Plaintiff was responsible for performing basic nurses' aide functions and also performing secretarial or telemetry monitoring. The Plaintiff's regular hours were Monday through Friday from 10:30 p.m. to 6:30 a.m. Plaintiff is an African-American female.

From December, 2004, until July, 2005, Defendant Conners, a white female, was Plaintiff's immediate supervisor. During that time, Defendant Conners received complaints from staff about Plaintiff's refusal to complete work assigned to her. As a result, Defendant Conners gave Johnson several disciplinary notices.

In July, 2005, UAMS hired Defendant Bryson, a black female, to manage operations on floors 6B and 4A. Generally, Johnson had been assigned to work on 6B. However, when Defendant Bryson became supervisor, because of staff shortages at night, Plaintiff was often re-directed to work on 4A. Defendant Bryson often received complaints from the nursing staff when the Plaintiff was assigned to work on 4A.

Plaintiff received four disciplinary notices from Bryson leading to her termination. The first, dated September 23, 2005, reprimanded Plaintiff for repeatedly calling in sick. The second, dated January 11, 2006, addressed Plaintiff's behavior and advised Plaintiff of the importance of completing her assigned tasks. The third, on April 2, 2006, disciplined Plaintiff for her continued refusal to complete tasks that were her responsibility and for excessive absences. The final disciplinary notice dated April 21, 2006, reprimanded Plaintiff for continued insubordination. The April 21st notice resulted in Plaintiff's termination.

On June 5, 2006, Plaintiff filed an EEOC charge related to her termination. In the charge, Plaintiff claimed that she was terminated because of her race and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and because of her disability in violation of the Americans with Disabilities Act of 1990 ("ADA").

## II.     Summary Judgment Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED. R.CIV.

P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See *Anderson,* 477 U.S. at 248-49; see also *Hartnagel v. Norman,* 953 F.2d 394, 395-96 (8th Cir.1992). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247-48 (emphasis omitted). If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See *Celotex,* 477 U.S. at 322.

**III.   Analysis**

A.   *Race Discrimination*

Plaintiff claims she was terminated based on her race, African-American. To establish a prima facie case of discrimination under Title VII, Plaintiff must show: (1) she is a member of a protected class; (2) she met her employer's legitimate expectations; (3) she suffered a materially adverse employment action; and (4) similarly situated employees who were not members of the protected class were treated more favorably. *Higgins v. Gonzales*, 481 F.3d 578, 584 (8th Cir. 2007). Once a prima facie case is established, a rebuttable presumption of discrimination arises and the burden then

shifts to the employer to articulate a legitimate nondiscriminatory business reason for its actions. *McDonnell Douglas Corp. v. Green*, 411 U .S. 792, 802, 93 S.Ct. 1817 (1973). Once such a reason is produced, "the presumption disappears and the [plaintiff] bears the burden of proving that the proffered reason was pretextual and the real reason for the [adverse employment action] was discrimination." *Thomas v. First Nat'l Bank*, 111 F.3d 64 (8th Cir. 1997).

The Court finds that Plaintiff has established only the first and third elements of a prima facie case of race discrimination. She is a member of a protected class and she was terminated from her employment with UAMS. However, the second and fourth elements are problematic for the Plaintiff. There is no admissible evidence in the record that Plaintiff met her employer's legitimate expectations.[1] On the other hand, Defendants have put ample evidence into the record, including affidavits from Plaintiff's former supervisors referencing disciplinary notices and staff complaints, establishing that Plaintiff was not meeting her employer's legitimate expectations for attendance or performance of her duties.

---

[1] In spite of the Court's order (#47) notifying Plaintiff that FED. R. CIV. P. 56(e) requires that she respond to the motion for summary judgment with affidavits, records, or other evidence establishing a genuine issue of material fact, Plaintiff did not provide the Court with any sworn testimony. Instead, Plaintiff's response to the summary judgment motion is a multi-page document and a statement of disputed facts. These documents contain many unsubstantiated allegations. Plaintiff's response references exhibits. However, no exhibits were attached. In consideration of her *pro se* status, the Court reviewed the documents Plaintiff had attached to her original complaint.

Further, Plaintiff has not provided the court with any evidence regarding white employees who were accused of similar offenses but were disciplined differently. Employees are similarly situated when they "are involved in or accused of the same offense and are disciplined in different ways." *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968 (8th Cir. 1994) (citing *Boner v. Board of Comm'rs*, 674 F.2d 693, 697 (8th Cir.1982) (stating that "the offense of suspected embezzlement is not comparable to [plaintiff's] offense of poor job performance")). The record in this case is void of any evidence of an incident where a white employee was accused of the same offense as the Plaintiff but was not discharged. Accordingly, Plaintiff has not made out a prima facie case of race discrimination.

B.   *Gender Discrimination*

To establish a prima facie case of gender discrimination, Plaintiff must prove the same elements as required to establish a race discrimination claim. *Turner v. Gonzales*, 421 F.3d 688, 694 (8th Cir. 2005). Again, it is not disputed that Plaintiff is a member of a protected class, or that she suffered an adverse employment action. However, for the reasons discussed above, the evidence shows that she was not meeting the legitimate expectations of her employer. Further, Plaintiff has not alleged that similarly situated men were treated differently. In her response, Plaintiff claims there was a male PSA, Dale Gray, who "didn't do anything but sleep in the monitors booth all night." But Plaintiff has not produced evidence that Gray received complaints from co-workers,

received disciplinary notices, or maintained his employment in spite of similar circumstances. Plaintiff has not established a prima facie case of gender discrimination.

C.     *Disability Discrimination*

In order to establish a prima facie case of discrimination under the ADA, Plaintiff must show that she: (1) has a "disability" within the meaning of the ADA; (2) is a "qualified individual" under the ADA; and (3) "suffered an adverse employment action as a result of the disability." 42 U.S.C. § 12112(a) (1994); *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 684 (8th Cir. 2002). The ADA defines disability as "a physical or mental impairment that substantially limits one or more . . . major life activities." 42 U.S.C. § 12102(2)(A) (1994). Plaintiff describes her physical impairments as back pain and an eye injury that causes her to have eye infections and requires her to wear glasses. Assuming Plaintiff has impairments, Defendants argue that her impairments do not substantially limit any of her major life activities. As defined in 29 C.F.R. § 1630.2(I), the term major life activity means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." It is undisputed that Plaintiff's alleged impairments in no way prevented her from performing her full job duties while she was at UAMS. Plaintiff does not point to any other major life activity in which she is limited. Based on this record, Plaintiff has not established that she is disabled within the meaning of the ADA, and Defendants are entitled to summary judgment on Plaintiff's disability claim.

D.	*Retaliation*

In her Complaint and Response to the Motion for Summary Judgment, Plaintiff claims that Defendants retaliated against her in violation of Title VII. A plaintiff is required to exhaust administrative remedies by filing a timely charge of discrimination with the EEOC prior to filing a lawsuit under Title VII. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (1994). Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts. *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81, 109 S.Ct. 2363, 2374-75 (1989).

It is undisputed in this case that the Plaintiff's EEOC charge filed on June 5, 2006, alleges discrimination based on race, sex and disability, but does not include a claim of retaliation. Accordingly, the retaliation claim was not addressed by the EEOC administrative process and cannot be heard by this Court. *Williams*, 21 F.3d at 223.

However, even if Plaintiff had exhausted her retaliation claim before the EEOC, it would still be subject to summary judgment. After reading the Complaint and Response to the Motion for Summary Judgment, it appears that Plaintiff is not claiming that she suffered an adverse employment action because she filed a charge with the EEOC or reported discriminatory behavior, but instead Plaintiff appears to be claiming Defendants harassed her on the job and then terminated her in April 2006 because they believed that

in the fall of 2004 she reported a nurse, LeaAnn Mercer, to the Arkansas Nursing Board for neglect. Title VII's anti-retaliation provision protects employees only against employer actions that "discriminate against" an employee because she has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." *Burlington Northern and Santa Fe Ry. Co. v. White*, ___ U.S. ___, 126 S.Ct. 2405, 2415 (citing 24 U.S.C. § 2000e-3(a)). Plaintiff's alleged retaliation does not in any way relate to her Title VII claims. Accordingly, even if Plaintiff had exhausted a retaliation claim, it would be subject to dismissal on summary judgment.

**IV.   Conclusion**

Plaintiff has failed to sustain her burden of proof in establishing a prima facie case for race or sex discrimination under Title VII or disability discrimination under the ADA. Accordingly, Defendants' Motion for Summary Judgment (#44) is GRANTED. The Clerk is directed to close the case.

IT IS SO ORDERED this 5th day of November, 2007.

_____
UNITED STATES MAGISTRATE JUDGE